**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES WHITNEY,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:19-CV-1250** |
| **v.** | : | **(Judge MANNION)** |
| **TAMMY FERGUSON,** *et al.,* | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the court is a motion for partial summary judgment filed by the defendants. For the reasons set forth below, the motion will be **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

The plaintiff, Charles Whitney ("Whitney"), is an inmate currently incarcerated in the State Correctional Institution in Marienville, Pennsylvania ("SCI-Forest"). At all times relevant to this case, he was incarcerated in the State Correctional Institution in Bellefonte, Pennsylvania ("SCI-Benner Township").

Whitney initiated this case through the filing of a complaint on July 19, 2019. (Doc. 1). The complaint raises causes of action under 42 U.S.C. §1983

for excessive force and deliberate indifference to inmate health and safety in violation of the Eighth Amendment. (*Id.*) The defendants are various members of the correctional staff at SCI-Benner Township.

Whitney alleges that during an incident on March 4, 2017, Defendant Englebrecht[1] sexually harassed him through various lewd comments and that, shortly after those comments were made, Defendants Burk and Snowberger assaulted him. (*Id.*) Whitney alleges that during the assault, one of the defendants sexually abused him by repeatedly striking and grabbing his penis and testicles. (*Id.*) Whitney further alleges that after the alleged assault, he was confined in a cell in the Restricted Housing Unit ("RHU"), where he was subsequently denied food, clothing, blankets, and medical treatment. (*Id.*) He also alleges that the defendants failed to provide him with grievance forms necessary to complain about the incidents involving Englebrecht, Burk, and Snowberger. (*Id.*) The defendants answered the complaint on June 1, 2020. (Doc. 19).

---

[1] Whitney's complaint refers to Defendants Englebetch, Burt, and Snowburger, but subsequent filings by the defendants indicate that the correct spelling of these defendants' names are, respectively, Englebrecht, Burk, and Snowberger. The court will use the spellings taken from the defendants' filings, but will construe any references in the record to "Englebetch," "Burt," and "Snowburger" as references to Englebrecht, Burk, and Snowberger, respectively.

Following the close of fact discovery, the defendants filed the instant motion for summary judgment on November 2, 2020. (Doc. 32). The defendants filed a brief in support of the motion and a statement of material facts on the same day. (Docs. 33-34). Whitney did not file a brief in opposition to the motion, and the deadline for doing so has expired under the Local Rules. *See* M.D. Pa. L.R. 7.6.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*,477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358

F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*,139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other

facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

### III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants' motion for partial summary judgment seeks summary judgment as to two of Whitney's claims: his Eighth Amendment sexual harassment claim against Defendant Englebrecht, and his Eighth Amendment sexual abuse claim against Defendants Burk and Snowberger. The defendants have provided a statement of material facts in support of the motion. Because the defendants' statement bases many of its factual allegations on the transcript of Whitney's deposition, the court will cite directly to the transcript when appropriate.[2]

According to Whitney's deposition, he was working on a computer kiosk when Defendant Englebrecht, who was working as a relief officer, began to sexually harass him. (Doc. 35-2 at 13:21-25). Englebrecht called Whitney a creep and a weirdo, asked him whether he was "going to [his] cell to jerk off," and asked him whether he used gloves to "jerk off." (*Id.* at 15:15-

---

[2] The transcript is docketed at Doc. 35-2. To avoid confusion, the court will cite to the transcript using the transcript's original pagination rather than the CM-ECF header.

23). Englebrecht did not make any physical contact with Whitney during this exchange. (*Id.* at 16).

After this incident, Whitney was told to return to his cell by Defendant Englebrecht and Defendant Burk, who was working as a sergeant at the time and observed the exchange between Whitney and Englebrecht. (*Id.* at 14:1-7). About ten minutes after he returned to his cell, the cell door was opened, and Whitney went to a janitor's closet, where he considered making a knife. (*Id.* at 14-16). According to Whitney, he was angry and was planning to use the knife on "[t]he first person [he] came in contact with." (*Id.* at 15-16).

While Whitney was in the janitor's closet, he was approached by Defendant Englebrecht, and they began to argue about Englebrecht's earlier statements. (*Id.* at 16:4-10). During this conversation, Englebrecht made a phone call to Defendant Burk, and Burk subsequently approached Whitney after he had left the janitor's closet. (*Id.* at 16-17).

Whitney states that he was about to go back to his cell when Burk told him, "Go to your cell before I fucking spray you." (*Id.* at 17:5-7). Whitney told Burk that Englebrecht had sexually harassed him, and Burk responded, "I don't give a fuck what she did; go in your cell before I spray you." (*Id.* at 17:8-9).

Whitney began to walk back to his cell, when, according to Whitney, Defendant Burk grabbed him and tried to throw him to the floor. (*Id.* at 19:12-16). Burk's attempt to throw Whitney to the floor was unsuccessful, which prompted Defendant Snowberger to help Burk. (*Id.* at 19:17-21). Burk and Snowberger then threw Whitney to the floor. (*Id.* at 20:20-21).

After the defendants had thrown Whitney to the floor, he was lying on his stomach. (*Id.* at 21:12-14). Defendant Snowberger grabbed Whitney's fingers in such a way that Whitney thought he was trying to break them, and the defendants handcuffed Whitney behind his back. (*Id.* at 21). Once Whitney was handcuffed, Whitney states that one of the defendants, which he assumed was Defendant Burk, began to strike him in his "groin area." (*Id.* at 23:1-2). Whitney alleges that the defendant then grabbed his groin two or three times. (*Id.* 24:10-14). Shortly after this happened, Defendant Woolrough broke up the altercation between Whitney, Burk, and Snowberger by pulling Whitney up from the floor, throwing him against a wall, and trying "to rip [Whitney's] eye out of the socket." (*Id.* at 24:21-23).

The defendants' account of what happened between Whitney, Burk, and Snowberger, which is largely based on Defendant Burk's incident report from shortly after the incident, differs significantly from Whitney's account.

According to the defendants,[3] Defendant Englebrecht called Burk on the phone to tell him that Whitney was threatening her. (Doc. 35-3 at 2). Burk went to where the two individuals were located and observed Engelbrecht give Whitney six orders to return to his cell. (*Id.*) Whitney did not comply, at which point Burk told him to go to his cell or he would get pepper sprayed. (*Id.*) Whitney got about "a cell away from his Cell," turned around, and charged at Burk with a closed fist. (*Id.*) Burk "grabbed [Whitney] in a hug" in order to defend himself. (*Id.*) Snowberger then arrived, assisted Burk in placing Whitney on the ground, and placed Whitney in handcuffs. (*Id.*) A response team arrived and took Whitney and Burk away from the area, and Burk was examined in the prison's medical unit. (*Id.*)

## IV.   DISCUSSION

Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

[3] The court cites directly to Burk's incident report when appropriate. The incident report is docketed at Doc. 35-3.

8

> action at law, suit in equity, or other proper proceeding for
> redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983,

a plaintiff must demonstrate that the challenged conduct was committed by

a person acting under color of state law and deprived the plaintiff of rights,

privileges, or immunities secured by the Constitution or laws of the United

States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms,

Section 1983 does not create a substantive right, but merely provides a

method for vindicating federal rights conferred by the United States

Constitution and the federal statutes that it describes. *Baker v. McCollan*,

443 U.S. 137 (1979).

Two of Plaintiff's Section 1983 claims are at issue in the instant motion

for summary judgment: his sexual harassment claim against Defendant

Englebrecht and his sexual abuse claim against Defendants Burke and

Snowberger. The court will analyze these claims separately.

**A. Sexual Harassment Claim**

Although sexual abuse may violate the Eighth Amendment in certain

circumstances, *see Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018), verbal

sexual harassment unaccompanied by any other injury is not sufficient to

establish an Eighth Amendment violation. *See, e.g.*, *Sears v. McCoy*, 851 F.

App'x 668, 670 (3d Cir. 2020) ("A prisoner's allegations of verbal

harassment, unaccompanied by another injury, are not cognizable under §1983."); *accord Proctor v. James*, 811 F. App'x 125, 128 n.2 (3d Cir. 2020); *Gandy v. Reeder*, 778 F. App'x 149, 151 (3d Cir. 2019); *Washington v. Rozich*, 734 F. App'x 798, 801 (3d Cir. 2018); *McCormick v. Kline*, 670 F. App'x 764, 765 (3d Cir. 2016); *Robinson v. Taylor*, 204 F. App'x 155, 156 (3d Cir. 2006).

In this case, Whitney brings an Eighth Amendment claim against Defendant Englebrecht based on Englebrecht's alleged sexual harassment, but he concedes that Englebrecht did not make any physical contact with him or otherwise cause him any injuries beyond the alleged verbal harassment. (*See* Doc. 35-2 at 16). Defendant Englebrecht is accordingly entitled to summary judgment as to Whitney's Eighth Amendment sexual harassment claim. *See, e.g.*, *Sears*, 851 F. App'x at 670.

**B. Sexual Abuse Claim**

Prison sexual abuse can constitute cruel and unusual punishment in violation of the Eight Amendment. *Ricks*, 891 F.3d at 473. To succeed on an Eighth Amendment sexual abuse claim, a plaintiff must establish both an objective prong and a subjective prong. *Id.* at 475. "That is, the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind." *Id.*

10

A defendant has a culpable state of mind if he has no "legitimate penological purpose" for his actions and acts "maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). This mental state can be inferred from circumstantial evidence, and the "nature of the violative conduct itself will often be enough to demonstrate the prison official's culpable state of mind." *Id.* (quoting *Crawford v. Cuomo*, 796 F.3d 252, 252 (2d Cir. 2015)). Actions taken with "a desire to humiliate the inmate or gratify the officer" are sufficient to establish the subjective prong of an Eighth Amendment sexual abuse claim. *Id.* at 476.

As for the objective prong, courts considering whether a defendant's conduct is objectively cruel and unusual should do so "with sensitivity to 'evolving standards of decency.'" *Id.* at 477 (quoting *Graham v. Florida*, 560 U.S. 48, 58 (2010)). There is no mechanical test for determining whether an alleged incident of sexual contact is sufficiently serious to find a violation of the Eighth Amendment, but the "scope, place, and timing of the offensive conduct will bear on its severity, as will the details of the alleged contact." *Id.* at 478. In addition, "it goes without saying that objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline." *Id.*

In order to establish an Eighth Amendment violation, a plaintiff does not need to establish that there were multiple incidents of sexual abuse. *Id.* at 475. Rather, "a single incident of sexual abuse, if *sufficiently severe or serious*, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Id.* (emphasis in original) (quoting *Crawford*, 796 F.3d at 257 (2d Cir. 2015).

The defendants in this case argue that summary judgment is appropriate because there is no evidence that Defendants Burk and Snowberger acted with the subjective intent to sexually gratify themselves or humiliate Whitney during the alleged incident. (Doc. 33 at 12-13). According to the defendants, the evidence of record establishes that Whitney initiated a physical altercation with Burk and Snowberger and that any contact the defendants made with Whitney during the incident was for the legitimate penological purpose of regaining physical control over Whitney. (*Id.*) Thus, the defendants argue, Whitney cannot establish the subjective prong of an Eighth Amendment sexual abuse claim, and the defendants are entitled to summary judgment on that basis. (*Id.*)

After reviewing the defendants' argument and the evidence of record, the court will deny the defendants' motion for summary judgment as to Whitney's sexual abuse claim because genuine issues of material fact

12

preclude the entry of summary judgment. Although Defendants Burk and Snowberger assert that they only touched Whitney to regain physical control over him and did not have the subjective intent to sexually gratify themselves or humiliate Whitney, Whitney's deposition testimony belies this assertion.

According to Whitney's testimony, Burk and Snowberger initiated the physical altercation and did not touch Whitney's penis until after they had thrown him to the ground face down and had handcuffed him behind his back. If believed, a reasonable finder of fact could infer from this testimony that Burk and Snowberger acted with the subjective intent to sexually gratify themselves or humiliate Whitney when they touched his penis. It is also clear that Whitney could satisfy the objective prong of an Eighth Amendment sexual abuse claim, as he alleges that the defendants deliberately grabbed his penis with no legitimate penological purpose. *See Ricks*, 891 F.3d at 478 ("[I]t goes without saying that objectively serious sexual contact would include sexualized fondling . . . ."). Accordingly, the court will deny summary judgment because there are genuine issues of material fact as to whether Defendants Burk and Snowberger sexually abused Whitney in violation of the Eighth Amendment.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment will be **GRANTED IN PART AND DENIED IN PART**. An appropriate order shall issue.


<u>*s/ Malachy E. Mannion*</u>
Malachy E. Mannion
United States District Judge


**DATE:**   September 30, 2021
19-1250-01